IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL No. 07-778 |
| | : | |
| TYRONE PRATT | : | |

## ORDER-MEMORANDUM

**AND NOW,** this 31st day of October, 2008, upon consideration of Defendant's Motion to Suppress Physical Evidence (Docket No. 21), and the Government's response thereto, and after an evidentiary hearing and argument on October 28, 2008, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

Defendant Tyrone Pratt has been charged with possession with intent to distribute more than 5 grams of cocaine base, possession with intent to distribute marijuana, and possession of a firearm in furtherance of a drug trafficking crime.  Presently before the Court is Defendant's Motion to Suppress the firearm and drugs, which police officers seized during the search of a residence at 502 Mountain Street in Philadelphia.

The search warrant affidavit that gave rise to the search of the Mountain Street residence states that, on June 18, 2008, Philadelphia police officer Sylvia Jones, a member of the Narcotics Field Unit ("NFU"), received a complaint concerning the selling and storage of crack cocaine and other illegal narcotics at the 502 Mountain Street address.  At approximately 5:00 p.m. that same day, Officer Jones and Police Officer Jett, another member of the NFU, set up surveillance in the 500 block of Mountain Street.  The officers observed several unknown black males entering and exiting, and sitting on the steps of, 502 Mountain Street.

The officers that day were working with a confidential informant ("CI"), who had been used

in the past and had proven to be trustworthy and reliable.  At approximately 5:15 p.m., the officers observed the CI go to 502 Mountain Street with a pre-recorded $20 bill.  The CI had a brief conversation with the males sitting on the steps at the residence.  Following that conversation, the CI and one black male, who had a stocky build (later identified as Defendant Pratt), walked away from the steps; the CI handed the $20 bill to the male; and the male retrieved items from his person and handed them to the CI.  The CI returned to the police and turned over one orange tinted packet containing a substance which subsequently tested positive for crack cocaine.  The police continued surveilling the residence after the CI transaction, and again observed males who were sitting on the steps re-enter the residence and return to the steps.[1]  When police subsequently performed a real estate check on the residence, the check revealed that Steven M. Silverman and Ernest J. Sims were the listed owners of the property.

Based upon the above information in the affidavit, Officer Jones obtained a search warrant for 502 Mountain Street on June 19, 2008.   The parties agree that at approximately 7:15 p.m. that same day, Officer Jones and other officers again set up surveillance of 502 Mountain Street.  At 7:45 p.m., the CI was sent to the residence with a pre-recorded $20 bill to make another purchase.  The CI spoke with a female who was sitting on the steps of the residence.  The CI and the female entered the residence, and one minute later, the CI exited the residence and returned to the officers.  He had in

---

[1]The affidavit actually states: "Police then observed the males who was [sic] sitting on the steps re enter the location[,] exit and sit back on the steps."  As the noun and verb are not in agreement, a question was raised at the hearing as to whether the sentence conveyed that a single male or multiple males re-entered the residence after the apparent drug transaction.  However, given that earlier statements in the affidavit establish that there were several males sitting on the steps, we read the reference to "the males" in the above sentence to be to the several males referenced earlier and conclude that it was therefore the verb choice, not the noun choice, that was in error.  Indeed, in our view, in the context of the affidavit as a whole, this is the only reasonable reading of above sentence.

his possession two packets of alleged crack cocaine.

At 7:50 p.m., Officer Jones and other officers executed the search warrant and arrested Defendant and the female who had engaged in the second drug buy with the CI.  Pursuant to the search of 502 Mountain Street, the officers confiscated crack cocaine; marijuana; an Astra Model A100, .45 caliber pistol, loaded with 10 live rounds of ammunition; and other items.  In a search of Defendant's person, the officers recovered over $700 in cash, including the pre-recorded buy money.

Defendant argues in his motion that the evidence seized in the search of 502 Mountain Street should be suppressed because the search warrant was issued based on a "bare bones" affidavit that did not establish probable cause for the search.  In addition, while the Government asserts that the officers who executed the warrant acted in good faith, Defendant argues that there can be no good faith reliance on a "bare bones" affidavit.

Under the Fourth Amendment, the government must typically obtain a warrant prior to searching areas in which an individual possesses a reasonable expectation of privacy.  United States v. Herrold, 962 F.2d 1131, 1136-37 (3d Cir. 1992).  It is well-established that "the Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."  Payton v. New York, 445 U.S. 573, 590 (1980).

A magistrate judge may find probable cause for the issuance of a search warrant if, considering the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  The issuing judge's determination that probable cause existed is to be accorded great deference.  Id. at 236; see also United States v. Conley, 4 F.3d 1200, 1205-06 (3d Cir. 1993).  Accordingly, "[a]

3

reviewing court must determine only that the [issuing] judge had a 'substantial basis' for concluding that probable cause existed to uphold the warrant." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000) (citing Gates, 462 U.S. at 238).  In making this determination, the reviewing court may consider only "the facts that were before the [issuing] judge, i.e., the affidavit, and not consider information from other portions of the record." United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993).  The affidavit must be read in its entirety and in a common sense and nontechnical manner. United States v. Williams, 124 F.3d 411, 420 (3d Cir. 1997) (citing Conley, 4 F.3d at 1206). Meanwhile, "the resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." United States v. Ventresca, 380 U.S. 102, 109 (1965) (citing Jones v. United States, 362 U.S. 257, 270 (1960)).  The defendant bears the burden of establishing by a preponderance of the evidence that his Fourth Amendment rights were violated. United States v. Acosta, 965 F.2d 1248, 1257 n.9 (3d Cir. 1992) (citing Rakow v. Illinois, 439 U.S. 129, 130 (1978)).

We find by a preponderance of the evidence that the affidavit giving rise to the search warrant for 502 Mountain Street, read in a common sense and nontechnical manner, provided a substantial basis for issuance of a warrant.  Defendant argues that the affidavit is a "bare bones" affidavit, i.e., an affidavit which "contains wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause."  (Def.'s Mem. at 2 (quoting United States v. Wilhelm, 80 F.3d 116, 121 (4th Cir. 1996)).  He cites as examples of "bare bones" affidavits those that state merely that (1) a police officer "has cause to suspect and does believe" that contraband is located on the premises of the place to be searched, Nathanson v. United States, 290 U.S. 41, 44 (1933), or (2) officers "have received reliable information from a credible person and do

4

believe that heroin [is stored in a home]."  Aguilar v. Texas, 378 U.S. 108, 109 (1964), overruled on

other grounds by Gates, 462 U.S. 213.  His main argument appears to be that the affidavit in this case

does not set forth facts that establish a valid connection between the drugs that were sold to the CI

and the residence at 502 Mountain Street, because it states that Defendant "retrieved" the drugs that

he sold to the CI "from his person" and does not specifically state that the officers observed

Defendant enter the house at 502 Mountain Street either before or after the drug transaction.

        However, reading the affidavit in a common sense and non-technical manner, it is plain that

it is not so sparse as to constitute a "bare bones" affidavit and that, very much to the contrary, it

contains sufficient detail to establish a "fair probability" that contraband would be found in 502

Mountain Street.  Gates, 462 U.S. at 238.  As set forth above, the affidavit states that officers

observed several black males sitting on the front steps of the Mountain Street address, going into and

out of the residence, and returning to the steps.  The officers also observed a trustworthy and reliable

CI approach the males sitting on the stairs and purchase cocaine base from one of the males, later

determined to be Defendant.  Thereafter, the officers again observed the males going into and out of

the house.  Although Defendant is correct that there is no direct evidence set forth in the affidavit that

linked the specific drugs that Defendant sold to the CI to the interior of the house, the circumstances

set forth in the affidavit plainly provide support for a finding of probable cause to believe that

evidence of criminal activity would be found on the premises, where the group of males was

congregating and where Defendant, at a minimum, was engaged in drug activity.  See Jones, 994 F.2d

at 1056 ("While ideally every affidavit would contain direct evidence linking the place to be searched

to the crime, it is well established that direct evidence is not required for the issuance of a search

warrant.")  Accordingly, we reject Defendant's assertion that the search warrant was based on a mere

"bare bones" affidavit that did not set forth probable cause for the search.

Furthermore, we find that, in the absence of probable cause, the good faith exception to the exclusionary rule would apply. The "principal means today for effectuating the rights secured by the Fourth Amendment is through the judicially created exclusionary rule." United States v. Christine, 687 F.2d 749, 757 (3d Cir. 1982). However, suppression of evidence "'is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority.'" United States v. Hodge, 246 F.3d 301, 307 (3d Cir. 2001) (quoting United States v. Williams, 3 F.3d 69, 74 (1993)). "The test for whether the good faith exception applies is 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization.'" Id. (quoting United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999)). "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." United States v. Leon, 468 U.S. 897, 922 (1984) (internal quotation omitted).

The United States Court of Appeals for the Third Circuit has stated that an officer's reliance on a warrant is unreasonable only in the following four narrow situations:

> (1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2) when the magistrate judge abandoned his judicial role and failed to perform his neutral and detached function;
>
> (3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>
> (4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized."

United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars, 307 F.3d 137, 146 (3d Cir. 2002) (internal quotation omitted).  Here, Defendant argues only that the affidavit accompanying the search warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  We find, however, that even if the facts on which the warrant was based were insufficient to establish a substantial basis for concluding that probable cause existed, the search warrant was not "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Id. (internal quotations omitted).  To the contrary, the affidavit amply described a scenario at the 502 Mountain Street residence that certainly suggested that the residence was the center of a drug operation and, therefore, the executing officers, who included Officer Jones, could, reasonably and in good faith, rely on the search warrant that the magistrate issued.

Consequently, we deny Defendant's Motion to Suppress the evidence seized in the search of 502 Mountain Street.

BY THE COURT:


 /s/ John R. Padova, J.
John R. Padova, J.